IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROANN K. S.,<br><br>               Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,<br><br>                    Defendant. | CV 19-09-M-KLD<br><br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

## I.     <u>Procedural Background</u>

Plaintiff protectively filed an application for Title II disability insurance benefits in April 2014, alleging disability since April 3, 2014. (Doc. 6, at 273). Plater later amended her alleged onset date to April 3, 2013. (Doc. 6, at 158). Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Doc. 6, at 134). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 6, at 216,

221, 129-146). The Appeals Council denied Plaintiff's subsequent request for review, thereby making the ALJ's decision dated February 2, 2016 the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

"Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B.      Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The

claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a),

416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.  **Discussion**

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the amended alleged onset date of April 3, 2013. (Doc. 6, at 134). At step two, the ALJ found that Plaintiff had the following severe

impairments: degenerative disc disease in the lumbosacral spine, degenerative spondylolisthesis at L4-5, lateral foraminal stenosis at L5-S1, sacroiliitis, and bilateral hip bursitis. (Doc. 6, at 134). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 6, at 1016-17).

The ALJ then found that Plaintiff had the residual functional capacity to perform a reduced range of sedentary work as follows:

> [Plaintiff] is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 2 hours in an 8-hour day, sit for 30 minutes at one time where she can stand and stretch for 10 to 15 seconds before sitting again and with normal breaks can sit for 6 hours in an 8-hour day; can never climb ladders, ropes, and scaffolds and crawl, can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and avoid concentrated exposure to extreme cold and vibration.

(Doc. 6, at 137). Based on this residual functional capacity, the ALJ found at step four that Plaintiff was capable of performing past relevant work as an account manager, logistic manager, and dispatcher/trailer coordinator, both as generally performed in the national economy and as actually performed by her. (Doc. 6, at 140-41). Because Plaintiff was capable of past relevant work, the ALJ stopped at step four and found that Plaintiff was not disabled within the meaning of the Social Security Act from April 3, 2013 through the date of his decision on February 2,

2016. (Doc. 6, at 132, 141).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises five issues on appeal. First, Plaintiff maintains the ALJ failed to fully and fairly develop the administrative record because he did not order a consultative physical or psychological evaluation and did not obtain all of her medical records. Second, Plaintiff argues the ALJ erred by discounting the opinion of treating physician Dr. Patrick Danaher in favor of opinions provided by the non-examining state agency physicians. Third, Plaintiff contends the ALJ failed to give germane reasons for discounting a functional capacity evaluation completed by physical therapist Tara Wilson. Fourth, Plaintiff maintains the ALJ did not provide sufficiently clear and convincing reasons for discrediting her subjective symptom testimony. Finally, Plaintiff argues the ALJ erred by failing to consider the side-effects of her medications. The Court addresses each of these arguments in the order set forth below.

A.    **Subjective Symptom Testimony**

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective testimony. Plaintiff testified that she spends most of her days at home doing little more than taking short walks in her yard, lying down and sitting in her recliner, watching television, and doing physical

therapy exercises. (Doc. 6, at 166-69). She explained that she microwaves meals prepared by her husband, feeds the pets, does one load of laundry each week, needs to lean on the sink to rinse out dishes, and spends most of her time lying down. (Doc. 6, at 169-71). Plaintiff stated that she goes grocery shopping once a week with her husband and has to take hydrocodone and use lidocaine patches before leaving the house. (Doc. 6, at 172, 174). Plaintiff further testified that while shopping, she cannot walk around the store without leaning on her husband and the cart for support. (Doc. 6, at 172). Plaintiff stated that she is constant pain and uses Tramadol, Advil, and lidocaine patches on a daily basis. (Doc. 6, at 175-76).

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Factors for the ALJ to consider when assessing a claimant's subjective testimony include (1) daily activities, (2) the location, duration, frequency, and intensity of pain and other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment other than medication, and (6) any measures used to relieve pain and other symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416(c)(3). In addition, the ALJ may consider (1) ordinary techniques of credibility evaluation, such as prior inconsistent statements concerning the alleged symptoms, and (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also take the lack of objective medical evidence into consideration when assessing subjective symptom testimony but may not discount that testimony "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c). *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's

subjective statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible for several reasons. (Doc. 6, at 139).

First, while the ALJ recognized that Plaintiff was limited due to degenerative disc disease, he pointed out that this impairment was present long before her alleged onset date and had not prevented her from working. The ALJ further noted that Plaintiff stopped working at the time of her alleged onset date not because of her pain and other symptoms but because her employment was terminated for allegedly violating company policy. (Doc. 6, at 137, 177). An ALJ may consider evidence that a claimant stopped working for reasons unrelated to disability when discounting subjective symptom testimony. See *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Consistent with the ALJ's observation, Plaintiff stated on a disability report form that she had been wrongfully discharged and had therefore stopped working for "other reasons" not related to her alleged disability. (Doc. 6, at 396). Plaintiff nevertheless takes the position that the reasons for her termination were in fact disability-related because her back pain caused the gruff and stern demeanor for which she was apparently terminated. Plaintiff does not point to any evidence or treatment notes reflecting such a link, however, and her treating pain specialist Dr.

Patrick Danaher consistently observed that she demonstrated "appropriate mood and affect" during their visits. (Doc. 10, at 396, 400, 489). The ALJ permissibly found the fact that Plaintiff stopped working for reasons unrelated to her alleged disability undermined her testimony as to the severity of her symptoms.

Second, the ALJ considered that after her alleged onset date, Plaintiff held herself out as capable of working in order to collect unemployment benefits. (Doc. 6, at 137). Receipt of unemployment benefits may "cast doubt on a claim of disability," as it shows the claimant "holds [herself] out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). See also *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (where a claimant holds himself out as available for full-time work, receipt of unemployment benefits may undermine a claim of disability). The ALJ noted that while Plaintiff alleges disability since April 3, 2013, she received approximately $16,985 in unemployment compensation during the second, third, and fourth quarters of 2013. (Doc. 6, at 137, 275). Plaintiff concedes that she collected unemployment benefits during this period and does not argue or point to evidence that she only claimed availability for part-time work. (Doc. 12, 4). *See Dale S. v. Berryhill*, 2018 WL 4042818 *9 (C.D. Cal. Aug. 22, 2018) ("A represented claimant, upon seeing that the ALJ has relied on receipt of unemployment

compensation to discount subjective testimony should either present evidence to the Appeals Council that he/she only claimed availability for part-time work or else be found to have waived any challenge to the ALJ's finding of inconsistency.") The ALJ permissibly cited Plaintiff's receipt of unemployment benefits after her alleged onset date as a basis for discounting her subjective testimony.

Third, the ALJ discussed evidence showing that Plaintiff's symptoms improved with treatment. (Doc. 6, at 137-38). When assessing a claimant's subjective testimony, an ALJ may consider evidence demonstrating that the claimant's condition improved in response to treatment. See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *Tommasetti v. Astrue*, 533 F.3d at 1040; *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). The ALJ considered evidence reflecting that Plaintiff's back pain improved following lumbar fusion surgery in August 2014. (Doc. 6, at 138, 445-447). The ALJ also cited evidence showing that lumbar epidurals and sacroiliac joint injections provided additional relief, as did physical therapy. (Doc. 6, at 138, 480-484, 487-494). While the record reflects that Plaintiff continued to experience some degree of chronic back pain, the ALJ appropriately found that her subjective complaints as to the disabling

severity of her pain were undermined by evidence showing overall improvement with treatment.

Finally, the ALJ found that Plaintiff reported engaging in activities that were not entirely consistent with her alleged limitations. An ALJ may rely on a claimant's activities when discounting subjective complaints if those activities are inconsistent with the alleged symptoms. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As the ALJ pointed out, Plaintiff claimed in a July 21, 2014, function report that she was unable to sit, stand, or walk for more than five minutes, but indicated she was able to feed animals, do some laundry and vacuuming, drive a car, and leave her home on her own. (Doc. 6, at 139, 309, 311-312). While the activities Plaintiff described were certainly limited, the ALJ reasonably found they were not consistent with Plaintiff's claim that she could only sit, stand, or walk for five minutes at a time.

The Court concludes the ALJ provided sufficiently clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective testimony. To the extent Plaintiff argues the ALJ erred by not specifically walking through each of the seven factors set forth in 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3), including medication side effects, when assessing her subjective testimony, the Court is not persuaded. Review of the ALJ's decision reflects that

13

he adequately considered the relevant evidence and any error in not addressing medication side effects was harmless as outlined below.

**B.      Medication Side Effects**

Plaintiff maintains the ALJ failed to consider the side effects of her medications in making his residual functional capacity assessment. The ALJ is required to consider all factors that might have a significant impact on a claimant's ability to work, including medication side effects. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993). Side effects that are not "severe enough to interfere with [a claimant's] ability to work" need not be considered. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001). A claimant has the burden of producing evidence that her use of prescription drugs impairs her ability to work. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).

Plaintiff argues "the medical records are replete with references to side effects from her medications, which included nausea, weight gain, gastrointestinal issues, fatigue, and mental acuity." (Doc. 10, at 22). But Plaintiff does not support this general argument with any citations to the record and does not identify any objective evidence that her medications caused side effects that might interfere with her ability to work. Instead, Plaintiff relies on her own subjective claims of drowsiness and problems with concentration. Because Plaintiff did not produce any

"evidence of side effects severe enough to interfere with [her] ability to work," any error on the ALJ's part in not addressing those side effects was harmless. See *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ's failure to discuss medication side effects is not error where alleged side effects are not supported by the record); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet his burden of producing evidence that prescription medications impaired his ability to work).

### C.    Other Source Evidence

Plaintiff next argues the ALJ erred by not giving more weight to the opinion of her physical therapist, Tara Wilson.

A physical therapist is not an "acceptable medical source" and is instead considered an "other source" under the regulations. 20 C.F.R. §§404.1513(d)(1), 416.913(d). Other sources cannot give medical opinions and "cannot establish the existence of a medically determinable impairment" but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. SSR 06-03p. See also 20 C.F.R. §§ 404.1513(d), 416.913(d). While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" is not entitled to the same deference and may be discounted if the ALJ

provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

In July 2015, Wilson completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form on which she indicated that Plaintiff could only sit, stand, or walk for five minutes at a time. (Doc. 6, at 507). Wilson explained that her opinion was based on having treated Plaintiff for approximately one month – from June 8, 2015 to July 27, 2015. (Doc. 6, at 506). Wilson stated that Plaintiff could sit, stand, or walk for a total of one to two hours in a an eight-hour work day, and would spend the rest of that time lying down. (Doc. 6, at 507). Wilson referred the reader to her treatment notes for details. (Doc. 6, at 507).

The ALJ noted that Wilson had only seen Plaintiff five times over a six-week period (Doc. 6, at 139), and found that her opinion regarding Plaintiff's limited ability to sit, stand, and walk was apparently based on Plaintiff's subjective complaints, as Wilson had done no objective testing to measure Plaintiff's abilities. (Doc. 6, at 139). Consistent with the ALJ's reasoning, Wilson's notes reflect that during one of their sessions, Plaintiff reported doing better but then having more back pain after doing "a lot of driving this last weekend" which suggests she could sit for more than five minutes. (Doc. 6, at 499). While Wilson described Plaintiff having some pain flareups with increased exercises or driving, she also wrote that

Plaintiff tolerated therapy well and benefited from a SI (sacroiliac) belt. (Doc. 6, at 495-505). The ALJ reasonably discounted the extreme limitations identified by Wilson for the germane reason that she had only seen Plaintiff a handful of times over a short period of time, had not done any objective testing, and seemed to rely in large part on Plaintiff's subjective complaints.

### D.    Medical Opinion Evidence

Plaintiff argues the ALJ erred by discounting the opinion of treating physician Dr. Patrick Danaher in favor of opinions provided by the non-examining state agency physicians.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th

Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in

the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The administrative record in this case contains conflicting opinions from treating and non-examining medical sources. Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

Dr. Danaher is a pain medicine specialist who began treating Plaintiff for low back pain in April 2010. (Doc. 6, at 514). Dr. Danaher saw Plaintiff approximately four or five times a year in 2011 and 2012 (Doc. 6, at 521-5530, 644-670) and less frequently thereafter. (Doc. 6, at 480-484, 487-494, 512-513). He administered occasional lumbar epidurals and sacroiliac joint injections for Plaintiff's low back and hip pain. (Doc. 6, at 390, 483, 525).

On October 6, 2015, Dr. Danaher completed a residual functional capacity form on which he stated that Plaintiff symptoms included "bilateral low back pain and bilateral hip pain," and "occasional radicular right leg pain with prolonged standing (ie, longer than 3 hours)." (Doc. 6, at 514). Dr. Danaher indicated that L4-5 lumbar fusion surgery performed by orthopedic surgeon Dr. Michael Woods in

August 2014 had resulted in "minimal improvement," sacroiliac joint injections yielded "only temporary improvement on one occasion," and physical therapy resulted in "minor improvement." (Doc. 6, at 515). Dr. Danaher's prognosis for Plaintiff was "poor for return to work secondary to ongoing low back pain." (Doc. 6, at 515). He stated that "sitting, standing, or walking for two hours causes disabling low back pain requiring [Plaintiff] to lay down," (Doc. 6, at 516) and wrote that Plaintiff was not capable of working because "she is not able to sit for prolonged periods of time." (Doc. 6, at 518).

The ALJ considered Dr. Danaher's opinion but gave it limited weight primarily because it was not consistent with his treatment records, particularly his more recent ones. (Doc. 6, at 140). When Dr. Danaher provided his October 2015 opinion, he had most recently seen Plaintiff on May 26, 2015 and July 7, 2015. (Doc. 6, at 480-484, 487-491). At the office visit in May 2015, Plaintiff presented with low back and bilateral hip pain but described no neurologic deficits. (Doc. 6, at 480). Plaintiff's gait was antalgic with full weight bearing and no use of an assistive device, and she had normal lower extremity strength bilaterally. (Doc. 6, at 482). Dr. Danaher found limited active range of motion in Plaintiff's lumbar spine and administered bilateral trochanteric bursa injections. (Doc. 6, at 483). Dr. Danaher noted that a component of Plaintiff's pain had improved following L4-L5

fusion surgery in August 2014, and he recommended that she resume physical therapy and participate in a reconditioning program. (Doc. 6, at 483).

At the July 7, 2015, follow up visit, Dr. Danaher noted that the bilateral trochanteric bursa injections had resolved Plaintiff's left sided hip pain and provided five weeks of relief from right sided pain. (Doc. 6, at 487). Dr. Danaher described Plaintiff's level of distress as mild, noted that her gait and left hip were normal, and administered another trochanteric bursa injection in her right hip. (Doc. 6, at 489). Dr. Danaher did not see Plaintiff again before completing the residual capacity assessment form on October 6, 2015. The ALJ discussed Dr. Danaher's treatment notes from these two office visits and reasonably found they were not consistent with all of the limitations he identified on the residual functional capacity form.

The ALJ also found that Dr. Danaher's opinion was apparently based on Plaintiff's subjective complaints as to the severity of her pain, as he had performed no objective testing to identify her limitations and determine what tasks she was able to perform. (Doc. 6, at 140). As discussed above, the ALJ provided sufficiently clear and convincing reasons for discounting Plaintiff's subject testimony as to the severity of her pain and resulting limitations. Having discounted that that testimony, the ALJ permissibly discounted Dr. Danaher's

opinion to the extent it was based on Plaintiff's statements regarding the severity of her pain and limitations. See *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 1999); *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 1999).

Moreover, to the extent Dr. Danaher stated that Plaintiff most likely would not be able to return to work full time, the ALJ properly pointed out that a statement by a medical source that a claimant is "unable to work" is an opinion on an issue reserved to the Commissioner and is not a medical opinion. 20 C.FR. §§ 404.1527(d), 416.927(d).

Even where, as here, the ALJ properly discounts medical opinion evidence, the residual functional capacity assessment must be supported by substantial evidence in the record. See *Lester*, 81 F.3d at 830. In finding Plaintiff capable of a limited range of sedentary work, the ALJ gave partial weight to the opinions of the state agency physicians. Dr. Shanker Gupta reviewed the medical records and issued his opinion in September 2014 (Doc. 6, at 196-204), and Dr. Ronal Hull reviewed the medical records and issued his opinion in April 2015. (Doc. 6, at 206-215). Both Dr. Gupta and Dr. Hull found that Plaintiff was capable of sitting, standing, or walking a total of six hours in an eight-hour day, and identified other limitations consistent a range of light work. Notably, however, neither of them had

Plaintiff's most recent medical records in front of them when they issued their opinions. Even the ALJ agreed that Dr. Gupta and Dr. Hull overstated Plaintiff's abilities and gave their opinions only partial weight. The ALJ rejected many of their findings, including their assessment of Plaintiff's ability to stand and walk, climb ladders, ropes, and scaffolds, and crawl. (Doc. 6, at 140). Thus, the opinions of these non-examining medical sources do not constitute substantial evidence to support the ALJ's residual functional capacity assessment. As discussed below, the Court agrees with Plaintiff that the ALJ erred by not ordering a consultative physical examination.

### E.     Duty to Develop the Record

Plaintiff argues the ALJ failed to fully and fairly develop the record because he did not order a consultative physical or psychological evaluation and did not obtain all of her medical records

An "ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). But the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."

*Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Furthermore, whether to order a consultative evaluation or additional testing is left to the ALJ's discretion. *See* 20 C.F.R. §§ 404.1519a, 416.919a. See also *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001). The ALJ may order "a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow" the ALJ to make an informed disability determination. See 20 C.F.R. §§ 404.1519a, 416.1519a.

Plaintiff asserts that some of her medical records are missing and maintains the ALJ should have secured them. Plaintiff lists several medical providers by name but does not identify what records she believes are missing, explain what information they would have provided, or elaborate on how the records would have been material to the disability determination. (Doc. 10, at 20). Moreover, at the administrative hearing, the ALJ asked Plaintiff's attorney if he needed more time to get any additional medical records. (Doc. 6, at 157). Plaintiff's attorney identified certain additional medical records that predated the April 3, 2013, amended alleged disability onset date, but he did not suggest there were any other missing medical records. (Doc. 6, at 157). The ALJ held the record open for a period of thirty days to allow Plaintiff to submit additional medical records. (Doc. 6, at 193-194). Plaintiff's vague reference to additional medical records is

inadequate to establish that those records are material or that the ALJ should have obtained those records.

Plaintiff next argues the ALJ should have ordered a consultative psychological examination because he stated she was "not as incapacitated as she claims or perceives herself to be" (Doc. 6, at 138) when discounting her subjective testimony. But Plaintiff does not develop this argument any further, cite to any medical evidence of a severe mental impairment, or challenge the ALJ's step two finding that she does not have any severe mental impairments. She fails to show how the evidence of record concerning her psychological health was ambiguous or otherwise insufficient to support the ALJ's decision. Accordingly, Plaintiff has not given the Court any reason to find that the ALJ had a duty to further develop the record by ordering a psychological evaluation.

Plaintiff's final argument – that the ALJ should have ordered a physical consultative evaluation – is more persuasive. As discussed above, the ALJ properly discounted the functional capacity assessments provided by Dr. Danaher and Wilson. The only other functional capacity assessments were those provided by the state agency physicians, which the ALJ found overstated many of Plaintiff's physical limitations. There are no consultative examiner opinions in the record, and no other medical or other source opinions identifying Plaintiff physical abilities

and limitations. Absent such an opinion, the evidence as a whole was insufficient to allow the ALJ to make an informed disability determination. The ALJ thus erred by failing to obtain a consultative physical examination. Because the residual functional capacity assessment is not supported by substantial evidence, this case must be remanded.

### F.    Remand

Except in rare circumstances, the proper course is to remand to the agency for further proceedings. *Leon v. Berryhill* , 874 F.3d 1130, 1132 (9th Cir. 2017). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if all three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*,

775 F.3d 1133, 1141 (9th Cir. 2014 (quoting *Garrison*, 759 F.3d at 1021). Here, remand for further proceedings is warranted because a consultative examination is necessary, the record has not been fully developed, and there are outstanding issues that must be resolved before a disability determination can be made.

**IV.** **Conclusion**

For all of the above reasons,

IT IS ORDERED that the Commissioner's decision is reversed and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405)(g).

DATED this 7th day of October, 2019

Kathleen L. DeSoto
United States Magistrate Judge